# EXHIBIT B

# Metro Travel Services, Inc.

## TRANSPORTATION SERVICES AGREEMENT

THIS TRANSPORTATION SERVICES AGREEMENT ("Agreement") is made by and between METRO TRAVEL SERVICES, INC., dba METROPOLITAN SHUTTLE, a Delaware corporation, having its principal place of business at 11141 Georgia Avenue, Suite 218, Wheaton, Maryland 20902 ("MTS") and Care Transport ("CT"), having its principal place of business at 4180 Packard Rd., Ann Arbor, MI 48108 ("Vendor", "CT").

WHEREAS, MTS is in the business of arranging and providing for quality transportation charter services for organizations nationwide as a broker; and

WHEREAS, Vendor has agreed to provide MTS with vehicle(s) and/or driver(s), as requested by MTS, to fulfill MTS's commitments to its customers, subject to the terms and conditions specified herein.

NOW, THEREFORE, in consideration of the mutual promises herein contained and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the parties, intending to be legally bound, hereby agree as follows:

## ARTICLE I
## TRANSPORTATION SERVICES

1.1 *Securing Services.* The terms of this Agreement shall govern all equipment and services provided by Vendor to MTS during the term of this Agreement. MTS shall submit a purchase order to Vendor specifying the time, date, and general itinerary for each event (hereinafter, an "Event"), what type of and how many vehicles are desired. MTS shall provide a specific itinerary for each Event no later than two (2) days prior to the Event, unless booked within that time frame, in which case MTS will provide the itinerary at its earliest possible convenience.

1.2 *Confirmation.* Vendor shall confirm availability of the vehicle(s) and driver(s) requested within one day after receipt of the purchase order. Event shall be non-cancelable by Vendor unless due to reasons beyond Vendor's control, in which case Vendor should provide MTS with advance notice at the earliest possible time.

1.3 *Cancellation.* MTS shall endeavor to give Vendor notice of any cancellation of an Event promptly upon MTS's learning of such Cancellation.

## ARTICLE II
## VENDOR REPRESENTATIONS AND WARRANTIES

Vendor hereby represents and warrants to MSI as follows:

2.1 *Registration.* Vendor has been assigned the following Michigan DOT#L0857 and complied with all applicable registration requirements. Vendor's registration is currently in good

standing and not subject to any revocation proceedings. Vendor is subject to and in compliance with all applicable state and local laws governing transportation.

2.1 Vendor represents that it will be the motor carrier for purposes of the FMCSRS and compliance with all federal, state, and local laws and regulations applicable to the transportation conducted pursuant to this Agreement.

2.3 Vehicles. Vendor represents that all vehicles provided by Vendor shall be in compliance with the FMCSRs and that Vendor is in compliance with all FMCSRs related to safe vehicle operation, maintenance, and inspections including but not limited to 49 C.F.R. Parts 396 and 393. Additionally, and not in lieu of compliance with the FMCSRs, Vendor represents that all vehicles provided by Vendor shall meet the following requirements:

    i. Each vehicle shall have a valid registration and current license tags.
    ii. Each vehicle shall have certification of having passed state inspection requirements.
    iii. Each vehicle shall be insured.
    iv. Each vehicle shall be well-maintained and in good repair.
    v. The interior of each vehicle shall be in clean, nearly new condition, and devoid of all trash or loose items.
    vi. In addition to any inspection obligations under the FMCSRs, each vehicle shall be inspected within 24 hours prior to each Event to ensure that it meets the requirements of this Section 2.3.

2.4 Drivers. Vendor represents that all drivers provided by Vendor shall be qualified and have a valid commercial driver's license to operate the vehicle pursuant to the FMCSRs. Further Vendor represents that it is in compliance with all FMCSRs relating to drivers including, but not limited to, commercial driver's license, driver qualification (49 C.F.R. Parts 383 and 391), controlled substances and alcohol testing (49 C.F.R. Part 382), and hours of service (49 C.F.R. Part 395). All drivers provided by Vendor shall be considered to be agents of Vendor and not employees or agents of MTS during the transportation provided under this Agreement. Additionally, drivers shall comply with all applicable FMCSRs during the transportation and further shall meet the following requirements:

    i. Each driver shall be insured by Vendor.
    ii. Vendor shall have checked the criminal record of each driver and have determined each driver. A driver having a history of any criminal violations relating to sexual misconduct, battery, assault, theft, or any other charges likely to present a risk to the passengers transported under this Agreement, shall not be used by the Vendor. Additionally, notwithstanding any provision of the FMCSRs, Vendor shall not use any driver who has been convicted of any law, statute, or ordinance relating to controlled substances or alcohol.

2.5 Taxes/Permits/Penalties. Vendor is responsible for payment of all applicable taxes including but not limited to federal and state taxes, employment, fuel, road, and any and all tolls, charges, or fees incident to or related to the transportation. Vendor is required to acquire

all necessary licenses and permits to conduct the transportation. Vendor is required to pay any fines or penalties arising out of the transportation conducted pursuant to this Agreement.

2.6 <u>Corporate Authority</u>. The undersigned signatory, signing on behalf of Vendor, has the authority to bind the Vendor and this Agreement shall be a valid, legally binding obligation of Vendor.

## ARTICLE III
## VENDOR COVENANTS

3.1 <u>Insurance</u>. At all times during the term of this Agreement, Vendor shall maintain the Minimum Insurance Requirements (set forth in Section 3.2), covering the vehicle(s) and driver(s) being provided to MTS pursuant to this Agreement. Vendor agrees to add MTS as an additional insured on its policies covering the vehicle(s) and the driver(s) (i.e., General Liability and Automobile Liability. Within thirty (30) days after the date hereof, but in any event, no less than ten (10) days prior to the first Event hereunder, the Vendor shall provide MTS with a certificate or certificates of insurance evidencing the coverages required hereunder. Further, if at any time during the term of this Agreement Vendor receives notice from its insurance carrier of a change in or a termination of such coverage, Vendor shall promptly notify MTS of same. If Vendor's insurance expires during the term of the Agreement, Vendor shall immediately provide MTS with a new Certificate of Insurance reflecting the continuation of such coverage after such expiration.

3.2 <u>Minimum Insurance Requirements</u>. Vendor must maintain the minimum levels of insurance as prescribed by FMCSA from time to time and have on file with the FMCSA evidence of insurance in compliance with 49 C.F.R. Parts 365 and 387. Pursuant to 49 C.F.R. Part 387, the minimum levels of insurance (bodily injury and property damage) for passenger carriers as of the date of this Agreement are as follows:

        $1,000,000 Products/Completed Operations Aggregate
        $1,000,000 Personal/Advertising Injury Per Occurrence
        $ 50,000 Fire Legal
        $ 5,000 Medical Payments

- Workers Compensation and Employers Liability coverage as required in each jurisdiction work is to be performed pursuant to this Agreement by Vendor.

- All insurance coverage required by the Agreement shall be placed with an insurance company acceptable to MTS and must be a company admitted to do business in the jurisdiction in which work is to be performed and which has an A. M. Best & Co. rating of not less than A (Excellent) with a financial size category not less than X.

The above requirements represent only the minimum coverages required by MTS and in no way are intended to limit Vendor's liability.

3.3  Waiver of Subrogation. Vendor hereby waives subrogation on its behalf and on behalf of its insurer, to the extent subrogation on a paid claim can be legally waived prior to loss by contract between the parties, with respect to any payment made by such insurer under any liability policy. All required policies shall be endorsed to include a Waiver of Subrogation in favor of MTS. MTS shall not be liable to Vendor or any insurance company (by way of subrogation or otherwise) insuring Vendor for any loss or damage for bodily injury or personal injury, or any resulting loss of income, or losses from worker's compensation laws or benefits, occasioned during the Event in connection with the vehicle(s) and/or driver(s) provided by Vendor, whether or not such loss or damage is also covered by insurance benefiting MTS.

3.4  Subcontractors. Vendor agrees, represents, and warrants to MTS that any contractor to whom Vendor delegates its duties hereunder shall meet the requirements set forth in Article II hereof and Section 3.2 hereof.

3.5 NON-COMPETITION AND NONSOLICITATION

a.  Restrictive Covenants. Vendor agrees that during the term of this Agreement and for a period of TWO (2) YEARS following the termination of its service provision on behalf of Corporation for whatever reason (the "Restrictive Period"), it shall not, directly or indirectly, without prior written consent of Corporation, which consent may be withheld, conditioned or delayed in the sole and absolute discretion of Corporation:

(i)  employ, solicit for employment, or advise or recommend to any other person they employ or solicit for employment, any person employed at any time during the six (6) month period prior to termination of Vendor's relationship with Corporation or during the Restrictive Period; nor

(ii)  contact, solicit, serve, accept or handle any account, client or customer who was a customer of the Corporation or for whom Vendor provided services through the Corporation (whether or not a direct customer of the Corporation) at any time during the twelve (12) month period prior to termination of Vendor's relationship with the Corporation or during the Restrictive Period.

b.  Tolling of Restrictive Period. In the event that the Corporation takes legal action to enforce the provisions of this Section 1, the Restrictive Period shall not continue to run, but shall toll for so long as any such legal action is pending.

### ARTICLE IV
### TERM AND TERMINATION

This Agreement shall commence on the date hereof and continue until terminated by either party upon written notice to the other.

# ARTICLE V
# DUTY TO DEFEND AND INDEMNIFICATION

Vendor agrees to and does hereby indemnify and hold MTS, its officers, directors, and representatives ("Indemnitees") harmless from and against, and to reimburse Indemnitees with respect to, any and all claims, demands, causes of action, loss, damage, liabilities, costs and expenses (including attorneys' fees and court costs) of any and every kind or character, known or unknown, fixed or contingent, asserted against or incurred by MTS at any time and from time-to-time by reason of or arising out of (i) the breach of any representation or warranty contained in Article II or III of this Agreement, or (ii) the negligence or willful misconduct of Vendor, its employees, representatives, contractors and/or drivers.

Further Vendor agrees to and does hereby acknowledge that it has a duty to and is required to defend MTS, its officers, directors and representatives in connection with any proceedings arising out of or in any way connect to any and all claims of whatever kind arising out of Vendor's performance of this Agreement, including but not limited to claims for personal injury, property damage, fines, penalties, forfeitures, or any other claim related to the transportation to be provided under this Agreement.

# ARTICLE VI
# MISCELLANEOUS

6.1  Governing Law.  The rights and obligations of the parties hereto shall be interpreted, construed, and enforced in accordance with the laws of the State of Maryland. Vendor irrevocably consents to the jurisdiction of the state and federal courts of the State of Maryland and in any dispute arising out of this Agreement agrees to waive the defense that such courts lack personal jurisdiction over Vendor.

6.2  Conflicting Provisions.  In the event of any conflict between the terms of this Agreement and the terms of any purchase order, this Agreement shall control.

6.3  Counterparts; Facsimile.  This Agreement may be executed in separate counterparts, each of which shall be deemed an original and both of which shall together constitute one and the same instrument.  For the purposes of this Agreement, facsimile signatures shall be treated as original signatures.

6.4  No Agency Relationship.  Both parties acknowledge and agree that this Agreement does not create an agency relationship between the parties and that neither Vendor nor its drivers, employees, assignees or contractors are acting as MTS's agent in connection with the provision of transportation services under the Agreement.

6.5  No Trial by Jury.  MTS and Vendor each agrees to waive all rights to trial by jury in any claim, action, proceeding or counterclaim by either party against the other on any matters arising out of or in any way connected with an Event or this Agreement.

6.6 **Entire Agreement.** This Agreement, together with MTS's purchase orders to Vendor, constitute the entire agreement of the parties with respect to the subject matter hereof, and supersedes any other promises, representations, or conditions in any other agreement, whether oral or written. This Agreement may be modified or amended only in a written instrument signed by both parties.

## ARTICLE VII
## NEGOTIATED RATES

Vendor agrees to invoice MTS at the rates agreed to in the following schedule (based upon the monthly estimates provided by the Veteran's Administration's John Dingell Medical Center in Detroit Michigan):

7.1 - **BASE PERIOD:** July 1, 2012 – September 30, 2012

WHEEL CHAIR SERVICE RATES FOR THE HOURS OF: 6:01 A.M. – 6:00 P.M.

| SCHEDULE OF SERVICES | ESTIMATED QUANTITY | UNIT | UNIT PRICE | MONTHS | AMOUNT |
|---|---|---|---|---|---|
| 1. Base Rate Within 20 mile radius of the VAMC Detroit | 1100 | Trips X ▇▇▇ | | X3 | ▇▇▇ |
| 2. Mileage outside 20 mile radius of the VA | 4000 | Miles X ▇▇▇ | | X3 | ▇▇▇ |

WHEELCHAIR SERVICE RATES FOR AFTER HOURS 6:01 P.M. – 6:00 A.M.

| SCHEDULE OF SERVICES | ESTIMATED QUANTITY | UNIT | UNIT PRICE | MONTHS | AMOUNT |
|---|---|---|---|---|---|
| 3. Base Rate within 20 mile radius of the VAMC Detroit | 125 | Trips X ▇▇▇ | | X3 | ▇▇▇ |
| 4. Mileage outside 20 mile radius of the VA | 300 | Miles X ▇▇▇ | | X3 | ▇▇▇ |

## AMBULATORY SERVICE RATES FOR THE HOURS OF: 6:01 A.M. – 6:00 P.M.

| SCHEDULE OF SERVICES | ESTIMATED QUANTITY | UNIT | UNIT PRICE | MONTHS | AMOUNT |
|---|---|---|---|---|---|
| 5. Base Rate 20 Within mile radius of the VAMC Detroit | 950 | Trips X ▇ | | X 3 | ▇ |
| 6. Mileage outside 20 mile radius of the VA | 7000 | Miles X ▇ | | X 3 | ▇ |

## AMBULATORY SERVICE RATES FOR AFTER HOURS: 6:01 P.M. – 6:00 A.M.

| SCHEDULE OF SERVICES | ESTIMATED QUANTITY | UNIT | UNIT PRICE | MONTHS | AMOUNT |
|---|---|---|---|---|---|
| 7. Base Rate 20 Miles Radius Of the VA | 120 | Trip X ▇ | | X 3 | ▇ |
| 8. Mileage outside 20 Mile radius Of VA | 400 | Miles X ▇ | | X 3 | ▇ |

7.2 - OPTION YEAR 1: October 1, 2012 – September 30, 2013

## WHEELCHAIR SERVICE RATES FOR THE HOURS OF: 6:01 A.M. – 6:00 P.M.

| SCHEDULE OF SERVICES | ESTIMATED QUANTITY | UNIT | UNIT PRICE | MONTHS | AMOUNT |
|---|---|---|---|---|---|
| 1. Base Rate Within 20 mile radius of the VAMC Detroit | 1100 | Trips X ▇ | | X12 | ▇ |
| 2. Mileage outside 20 mile radius of the VA | 4000 | Miles X ▇ | | X12 | ▇ |

## WHEELCHAIR SERVICE RATES FOR AFTER HOURS: 6:01 P.M. – 6:00 A.M.

| SCHEDULE OF SERVICES | ESTIMATED QUANTITY | UNIT | UNIT PRICE | MONTHS | AMOUNT |
|---|---|---|---|---|---|
| 3. Base Rate within 20 mile radius of the VAMC Detroit | 125 | Trips X ▇ | | X12 | ▇ |
| 4. Mileage outside 20 mile radius of the VA | 500 | Miles X ▇ | | X12 | $ ▇ |

AMBULATORY SERVICE RATES FOR THE HOURS OF: 6:01 A.M. – 6:00 P.M.

| SCHEDULE OF SERVICES | ESTIMATED QUANTITY | UNIT | UNIT PRICE | MONTHS | AMOUNT |
|---|---|---|---|---|---|
| 5. Base Rate 20 With inmile radius of the VAMC Detroit | 950 | Trips X | ▇▇▇ | X 12 | ▇▇▇ |
| 6. Mileage outside 20 mile radius of the VA | 7000 | Miles X | ▇▇▇ | X 12 | ▇▇▇ |

AMBULATORY SERVICE RATES FOR AFTER HOURS: 6:01 P.M. – 6:00 A.M.

| SCHEDULE OF SERVICES | ESTIMATED QUANTITY | UNIT | UNIT PRICE | MONTHS | AMOUNT |
|---|---|---|---|---|---|
| 7. Base Rate 20 Miles Radius Of the VA | 120 | Trip X | ▇▇▇ | X 12 | ▇▇▇ |
| 8. Mileage outside 20 Mile radius Of VA | 400 | Miles X | ▇▇▇ | X 12 | ▇▇▇ |

7.3 - OPTION YEAR II: October 1, 2013 – September 30, 2014

WHEEL CHAIR SERVICE RATES FOR THE HOURS OF: 6:01 A.M. – 6:00 P.M.

| SCHEDULE OF SERVICES | ESTIMATED QUANTITY | UNIT | UNIT PRICE | MONTHS | AMOUNT |
|---|---|---|---|---|---|
| 1. Base Rate Within 20 mile radius of the VAMC Detroit | 1100 | Trips X | ▇▇▇ | X 12 | ▇▇▇ |
| 2. Mileage outside 20 mile radius of the VA | 4000 | Miles X | ▇▇▇ | X 12 | ▇▇▇ |

WHEELCHAIR SERVICE RATES FOR AFTER HOURS 6:01 P.M. – 6:00 A.M.

| SCHEDULE OF SERVICES | ESTIMATED QUANTITY | UNIT | UNIT PRICE | MONTHS | AMOUNT |
|---|---|---|---|---|---|
| 3. Base Rate within 20 mile radius of the VAMC Detroit | 125 | Trips X | ▇▇▇ | X 12 | ▇▇▇ |
| 4. Mileage outside 20 mile radius of the VA | 300 | Miles X | ▇▇▇ | X 12 | ▇▇▇ |

AMBULATORY SERVICE RATES FOR THE HOURS OF: 6:01 A.M. – 6:00 P.M.

| SCHEDULE OF SERVICES | ESTIMATED QUANTITY | UNIT | UNIT PRICE | MONTHS | AMOUNT |
|---|---|---|---|---|---|
| 5. Base Rate 20 With in mile radius of the VAMC Detroit | 950 | Trips X | ▬ | X 12 | ▬ |
| 6. Mileage outside 20 mile radius of the VA | 7000 | Miles X | ▬ | X 12 | ▬ |

AMBULATORY SERVICE RATES FOR AFTER HOURS: 6:01 P.M. – 6:00 A.M.

| SCHEDULE OF SERVICES | ESTIMATED QUANTITY | UNIT | UNIT PRICE | MONTHS | AMOUNT |
|---|---|---|---|---|---|
| 7. Base Rate 20 Miles Radius Of the VA | 120 | Trip X | ▬ | X 12 | ▬ |
| 8. Mileage outside 20 Mile radius Of VA | 400 | Miles X | ▬ | X 12 | ▬ |

7.4 - OPTION YEAR III: October 1, 2014 – September 30, 2015

WHEEL CHAIR SERVICE RATES FOR THE HOURS OF: 6:01 A.M. – 6:00 P.M.

| SCHEDULE OF SERVICES | ESTIMATED QUANTITY | UNIT | UNIT PRICE | MONTHS | AMOUNT |
|---|---|---|---|---|---|
| 1. Base Rate Within 20 mile radius of the VAMC Detroit | 1100 | Trips X | ▬ | X12 | ▬ |
| 2. Mileage outside 20 mile radius of the VA | 4000 | Miles X | ▬ | X12 | ▬ |

WHEELCHAIR SERVICE RATES FOR AFTER HOURS 6:01 P.M. – 6:00 A.M.

| SCHEDULE OF SERVICES | ESTIMATED QUANTITY | UNIT | UNIT PRICE | MONTHS | AMOUNT |
|---|---|---|---|---|---|
| 3. Base Rate within 20 mile radius of the VAMC Detroit | 125 | Trips X | ▬ | X 12 | ▬ |
| 4. Mileage outside 20 mile radius of the VA | 300 | Miles X | ▬ | X 12 | ▬ |

## AMBULATORY SERVICE RATES FOR THE HOURS OF: 6:01 A.M. – 6:00 P.M.

| SCHEDULE OF SERVICES | ESTIMATED QUANTITY | UNIT | UNIT PRICE | MONTHS | AMOUNT |
|---|---|---|---|---|---|
| 5. Base Rate 20 With 1 mile radius of the VAMC Detroit | 950 | Trips X | $■■■ | X 12 | $■■■ |
| 6. Mileage outside 20 mile radius of the VA | 7000 | Miles X | ■■■ | X 12 | ■■■ |

## AMBULATORY SERVICE RATES FOR AFTER HOURS: 6:01 P.M. – 6:00 A.M.

| SCHEDULE OF SERVICES | ESTIMATED QUANTITY | UNIT | UNIT PRICE | MONTHS | AMOUNT |
|---|---|---|---|---|---|
| 7. Base Rate 20 Miles Radius Of the VA | 120 | Trip X | ■■■ | X 12 | ■■■ |
| 8. Mileage outside 20 Mile radius Of VA | 400 | Miles X | ■■■ | X 12 | ■■■ |

EXECUTED AND DELIVERED
this
26th day of April, 2012

METROPOLITAN SHUTTLE, INC.

By: _____
Name: David A Becker
Title: Director GSA Services;
Metro Travel Services

CARE TRANSPORTATION:

By: S. Rabiah
Name: Sabah Rabiah Ph.D.
Title: President Owner;
Care Transport "CT"