# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

YASHAE BYERS, GLORIA ETZEL, and
JILL JANAVIKAS, on behalf of themselves
and all others similarly situated,

      Plaintiffs,                 Case No. 2:13-cv-15174-GER-LJM

                                     Hon. Gerald E. Rosen (presiding)

v.                              Hon. Laurie J. Michelson (referral)

CARE TRANSPORT, INC.,

      Defendant.

_____/

| | |
|---|---|
| DAVID A. HARDESTY (P38609) | STANLEY C. MOORE, III (P23358) |
| CAITLIN E. MALHOIT (P76606) | GARY W. FRANCIS (P64748) |
| **GOLD STAR LAW, P.C.** | **PLUNKETT COONEY** |
| Attorneys for Plaintiffs | Attorneys for Defendant |
| 2701 Troy Center Drive, Suite 400 | 38505 Woodward Avenue |
| Troy, MI. 48084 | Suite 2000 |
| (248) 295-7210 | Bloomfield Hills, MI  48304 |
| dhardesty@goldstarlaw.com | PH: (248) 901-4000 |
| cmalhiot@goldstarlaw.com | FAX: (248) 904-4040 |
| | smoore@plunkettcooney.com |
| | gfrancis@plunkettcooney.com |

_____/

## DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 56(C)

    **NOW COMES** Defendant, CARE TRANSPORT, INC., through its attorneys,

PLUNKETT COONEY, and pursuant to Fed. R. Civ. P. 56, submits its Brief in Response to

Plaintiffs' Motion for Partial Summary Judgment and requests that this Court deny Plaintiffs'

Motion.  In support of its Response, Defendant relies upon the attached Brief in Support of its Response, the attached Exhibits, and the pleadings on file with the Court.

Respectfully Submitted,

PLUNKETT COONEY

By:  /s/Gary W. Francis
      Stanley C. Moore, III (P23358)
      Gary W. Francis (P64748)
      Attorney(s) for Defendant
      38505 Woodward Avenue, Suite 2000
      Bloomfield Hills, MI  48304
      PH: (248) 901-4000 / FAX: (248) 901-4040
      gfrancis@plunkettcooney.com

Dated:  April 3, 2015

## **TABLE OF CONTENTS**

Table of Contents .... ................................................................................................ i

Statement of Issues Presented.................................................................................ii

Most Controlling Authorities ..................................................................................iii

I.    Introduction ............................................................................................ 1

II.   Standard of Review ................................................................................ 1

III.  Statement of Facts ................................................................................. 2

      A. Business of Care Transport ............................................................ 2

      B. DOL Investigation .......................................................................... 5

IV.   Argument………………………………………………......................... 7

      A. PLAINTIFFS ARE NOT "COVERED EMPLOYEES"
      UNDER THE SAFETEA-LU TECHNICAL
      CORRECTIONS ACT OF 2008…………………………………………..8

      1.  Law…………………………………………………………………..8

      2.  All Care Transport wheelchair vans are "designed"
          or used to transport over eight passengers…………………………10

      3.  The DOL Enforcement Guidance sets forth the
          Manner in which to examine passenger capacity…………………….13

      4.  The Court cannot divide up jurisdiction over Defendants
          Fleet of vehicles and drivers…………………………………….…...15

      B. . THE DEPARTMENT OF LABOR HAS INVESTIGATED DEFENDANT AND
         HAS DETERMINED THAT THE PLAINTIFFS ARE EXEMPT FROM
         OVERTIME AND NOT "COVERED EMPLOYEES"........................................18

V.    Conclusion…………………………………………………..……………….....25

## <u>STATEMENT OF ISSUES</u>

1. Are Plaintiffs entitled to summary judgment, holding that they and all proposed class members are "covered employees" entitled to overtime pay under the Fair Labor Standards Act, where all of Defendant's drivers drove vehicles that are designed and used to transport eight persons or less, including the driver?

   Plaintiffs' Answer:     Yes.

   Defendant's Answer: No.


2. Are Plaintiffs entitled to summary judgment, holding that they and all  all proposed class members who drove sedans or minivans during their employment are "covered" employees" entitled to overtime pay under the Fair Labor Standards Act ,where the sedans and minivans weigh 10,000 pounds or less and are neither designed nor used to transport more than eight persons, including the driver?

   Plaintiffs' Answer:     Yes.

   Defendant's Answer: No.

## MOST CONTROLLING AUTHORITIES

### Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ...................................................... 2

*Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895 (7th Cir. 2009) ...................................... 16

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986) ............. 1, 2

### Statutes and Regulations

29 U.S.C. §207 ................................................................................... 1, 7, 9, 18, 19

29 U.S.C. §213 ...................................................................................................... 8

29 C.F.R. 4.181 ................................................................................................. 6, 17

49 U.S.C. §13102 ................................................................................................... 8

49 U.S.C. §31502 ................................................................................................... 8

Safe, Flexible, Efficient Transportation Equity Act: a Legacy for Users Technical Corrections Act of 2008, P.L 110-244 §306 ......................................................................... 9, 10

Fed. R. Civ. P. 56(c) .............................................................................................. 1

## I.     INTRODUCTION

Plaintiffs have filed the instant lawsuit alleging a violation of 29 U.S.C. §207 of the

Fair Labor Standards Act ("FLSA") seeking overtime compensation for all individuals

employed as drivers of Care Transport, Inc. ("Defendant").  The drivers employed by

Defendant are exempt from overtime under the Motor Carrier Exemption of the FLSA.

Indeed, the Department of Labor ("DOL") investigated the Defendant and found no

entitlement to overtime.  Therefore, where the Plaintiffs are exempt from overtime under the

FLSA, their claims must fail and Plaintiff's instant motion should be denied.

The wheelchair vans which comprise almost the entirety of Defendant's fleet of

vehicles are **designed** to carry more than eight passengers and have, in fact, transported

more than eight passengers.  This is supported by the manufacturer's design and the

Enforcement Guidance of the Department of Labor ("DOL"). Furthermore, Defendant should

not be required to divide the jurisdiction over its fleet of vehicles and employees between

the FLSA and the Motor Carrier Act; but should only be governed by the Motor Carrier Act.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine issue as to any material fact

and...the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

When reviewing a motion for summary judgment, the facts and any reasonable inferences

drawn from the facts must be viewed in the light most favorable to the nonmoving party.

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 597, 106 S.Ct. 1348,

89 L.Ed.2d 538 (1986).  The party opposing summary judgment, however, must present more than a "mere scintilla" of evidence; the evidence must be such that a reasonable jury could find in favor of the plaintiff.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### III.   STATEMENT OF FACTS

#### A.  Business of Care Transport.

Care Transport, Inc. ("Defendant") is a company providing transportation services to individuals since approximately 1989 (*Exhibit A*, Deposition of Rabiah, p. 10, line 25 – p. 11, line 1).  Defendant primarily provides non-emergency transportation to individuals in the health care industry; providing rides to and from medical appointments.  Defendant's employees are not medical professionals and do not provided medical treatment.  Approximately 90% of Defendant's business is under two contracts with the United States Department of Veteran Affairs, or the Detroit VA Hospital and the Ann Arbor VA Hospital (*Exhibit A*, p. 20, line 21 – p. 22, line 1).  In addition, Defendant also provides private rides and transportation services to and from skilled nursing facilities; as well as private rides or fares.

Defendant has approximately 47 employees (*Exhibit A*, p. 26, lines 13-15).  Included in these employees are dispatchers, office/administrative employees, and drivers (*Exhibit A*, p. 28, lines 9 -25). Defendant currently has approximately 30 drivers who transport medical patients (*Exhibit A*, p. 28, line 25).

2

Since it is a transportation company, Defendant has a fleet of vehicles, including wheelchair vans, minivans, and sedans (*Exhibit A*, p. 10-13).  Defendant has approximately 54 total vehicles, and 40 of those vehicles are wheelchair accessible vans (*Exhibit A*, p. 40., line 20 – p. 41, line 11).  The wheelchair accessible vans are Ford Econoline E250 and E350 extended vans (*Exhibit A*, p. 40, line 14).  The wheelchair accessible vans are designed to, and can accommodate up to 9 passengers in the vehicle (*Exhibit A*, p. 41, lines 20 – 25).

All of Defendant's wheelchair vans are purchased from Mobility Transportation Services, located in Canton, Michigan (*Exhibit B*, Affidavit of David Brown, ¶ 2, President of Mobility Transportation Services).  All of the vans supplied by Mobility Transportation Services to Care Transport are manufactured and **designed** by Ford Motor Company as 12 and 15 passenger vehicles (*Exhibit B*, ¶ 3) (*Exhibit C*, VIN Data Sheets for all Defendant Vans).  Mobility Transportation Services is an after-market supplier who modifies the vehicles to make them wheelchair accessible.  (*Exhibit B*, ¶ 4).  The modification process includes removing rear seats of the van, creating an open area of 8' long by 5' 8" wide to accommodate wheelchairs, as well as installing tracks and pods into the floor as anchorages for wheelchair tie-downs (*Exhibit B*, ¶ 6, 8).  The wheelchair vans are designed to accommodate up to four wheelchairs, including four wheelchair tie-downs (*Exhibit B*, ¶ 6, 7).  Defendant's wheelchair vans have, in fact, transported up to four wheelchairs at one time (*Exhibit D*, Affidavit of Rabiah, ¶11).

3

Over 90% of the Defendant's work is in support of two separate federal contracts with the Department of Veterans Affairs.  Defendant is the subcontractor of Metropolitan Shuttle to provide all transportation services at the VA Hospital in Detroit, Michigan (_Exhibit E_); and the primary contractor to provide all transportation services at the VA Hospital in Ann Arbor (_Exhibit A_, p. 20, lines 21-23).  The current Detroit VA contract is attached at _Exhibit E_, which states that the "Contractor shall provide non-emergency patient transportation for all eligible patients of the John D. Dingell VA Medical Center, Detroit, pursuant to the Statement of Work, Schedule of Services and clauses contained herein." (_Exhibit E_, p. 1).

The "Statement of Work" set forth in each VA contract mandates specific interstate travel requirements for the contracting entity, including Ohio, Wisconsin and Illinois (_Exhibit F_).

As an employee of Defendant, **all** employees are expected to make interstate trips (_Exhibit A_, p. 77, lines 24-25) (Emphasis added).  In fact, both Plaintiffs Etzel and Byers testified that they drove interstate trips (_Exhibit G_, Deposition of Etzel, p. 39, lines 5-13; _Exhibit H_, Deposition of Byers, p. 37, lines 1-6).  In addition to the frequent trips under the VA contracts to other states, Defendant also routinely provides rides to Cleveland and/or Toledo, Ohio on an almost daily basis (_Exhibit A_, p. 63, lines 15-16).

As part of each employee's responsibilities, they are expected to provide interstate travel and be prepared to operate a wheelchair accessible van.  With respect to "Driver

4

Responsibilities," Defendant's employee handbook states that: "Driver must be able to drive wheel chair van and assist patients into and out of the vehicle, operate wheelchair lifts, and secure a wheelchair properly." (*Exhibit I*, Employee Handbook, p. 14).

### B. DOL Investigation

On January 16, 2013, Defendant received a correspondence from the U.S. Department of Labor ("DOL") indicating that it was scheduling a site visit and that it would be conducting an investigation (*Exhibit J*). The communication specifically stated: "This is to advise you that I will call at your establishment on the date and time shown above **to determine compliance with the Fair Labor Standards Act and related laws**." (*Exhibit J*). It is now known that Plaintiff Etzel prompted this investigation by making a complaint to the DOL (*Exhibit G*, p. 44, lines 18-20).

Within her initial communications to the DOL, Etzel spoke with DOL Officer Daniel Murphy (*Exhibit G*, p. 45, lines 17-23). Etzel laid out her specific complaints, citing numerous issues including knowledge of pay rates, compliance with federal contracts and, more specifically, **she informed Mr. Murphy she believed the drivers of Defendant should be getting overtime**:

> Q.     Did you state to Mr. Murphy that you believe employees should be getting overtime?
>
> A.     Correct.
>
> Q.     And that was in that initial discussion in January of 2013?
>
> A.     Correct. (*Exhibit G*, p. 47, lines 11-16).

Mr. Murphy's DOL Investigation began in January 2013 and was completed on or about May 30, 2015 (*Exhibit K*, DOL Compliance Report).  At the conclusion of his investigation, Mr. Murphy cited Defendant for two violations (1) FLSA – Failure to keep accurate records; and (2) Service Contract Act ("SCA") – Failure to pay prevailing wage rate under federal contract, including amounts for fringe benefits and holiday pay.  (*Exhibit K*). Defendant cooperated in the investigation and agreed to comply with all of Mr. Murphy's findings (*Exhibit K*).  In sum, Defendant was required to provide back pay to its drivers for prevailing wages in the amount of $24,809.74.

The DOL made **no** finding that Defendant was in violation of the FLSA's overtime regulations (*Exhibit K*).  What is more, the DOL found no violation of the SCA's requirement to compensate employees for overtime who are eligible under 29 C.F.R. 4.180-181 (*Exhibit K*).  In fact, Mr. Murphy specifically informed Sabah Rabiah, owner of Defendant, that the drivers of Defendant were exempt from overtime under the law (*Exhibit A*, p. 57, lines 18-21).  Moreover, at the conclusion of his investigation, Mr. Murphy informed Plaintiff Etzel that Defendant's drivers were exempt from overtime:

> Q.    But he stated that he did not believe that the drivers at Care Transport were entitled to overtime?
>
> A.    Correct.  (*Exhibit G*, p. 50, lines 7-9).

As part of Mr. Murphy's case narrative, he provides a detailed analysis of his findings, and specifically states that the drivers are exempt as follows:

Transportation contracts are exempt from the requirements under the CWHSSA, and **drivers are exempt from overtime under 13(b) of the FLSA as drivers who can leave the state and drive vehicles designed to carry at least 8 passengers, for compensation**. (*Exhibit L*, DOL Case Narrative, p. 4) (Emphasis added).

Not only does Mr. Murphy make the affirmative statement that drivers are exempt from overtime in his narrative, but in his closing materials to Defendant at the end of the investigation, he provided DOL Fact Sheet 19 regarding the Motor Carrier Exemption (*Exhibit M*, p. 8).

## IV.    ARGUMENT

Plaintiffs have set forth allegations that they are entitled to overtime under 29 U.S.C. §207 of the FLSA.  However, this claim is wholly without merit, as the employee drivers are exempt from overtime under the FLSA's Motor Carrier Exemption.  In Plaintiffs' instant Motion for Partial Summary Judgment, they are attempting to argue that the employee drivers of Defendant are not exempt, as they are "covered employees" under the SAFETEA-LU Technical Corrections Act of 2008 ("TCA").  The facts and law set forth below absolutely refute Plaintiffs' argument.

What is more, the Department of Labor has done a full and complete investigation of Defendant and confirmed that the employee drivers are, in fact, exempt from overtime, and already explained this to the representative Plaintiffs.  This lawsuit and Plaintiff's instant motion is further harassment, as Plaintiffs are seeking a second bite at the apple by trying to

have this Court undermine the findings of the Department of Labor. This is egregious and sanctions should be awarded.

### A. PLAINTIFFS ARE NOT "COVERED EMPLOYEES" UNDER THE SAFETEA-LU TECHNICAL CORRECTIONS ACT OF 2008

#### 1.    Law

Plaintiffs have alleged that the employee drivers of Defendant are entitled to overtime.  Defendant has maintained that its employee drivers are exempt from overtime under the Motor Carrier Exemption of the Fair Labor Standards Act ("FLSA") – precisely what the DOL concluded after its investigation of Defendant in 2013.  Section 213(b)(1) of the FLSA provides an overtime exemption for employees who are within the authority of the Secretary of Transportation to establish qualifications and maximum hours of service pursuant to Section 204 of the Motor Carrier Act of 1935.  49 U.S.C. §31502.

An employee is subject to, or exempt under, the Motor Carrier Exemption if he or she is:  (1) Employed by a motor carrier or motor private carrier, as defined in 49 U.S.C. §13102; (2) a driver, drivers helper, loaders, or mechanic whose duties affect the safety of operations of motor vehicles in transportation on public highways, in interstate commerce or foreign commence; and (3) not covered by the small vehicle exemption.

There is no dispute.  Plaintiffs have conceded that Plaintiffs were employed by a motor carrier or private motor carrier, and that they worked as drivers engaged in interstate

commerce[1]; satisfying the first two prongs above.  The primary issue before this Court is prong three, whether the Plaintiff are covered by the small vehicle exemption.  Defendant submits that they are not covered by the small vehicle exemption.

The Safe, Flexible, Efficient Transportation Equity Act: a Legacy for Users Technical Corrections Act of 2008, P.L 110-244 §306. ("SAFETEA-LU", or "Technical Corrections Act" or "TCA") was enacted to provide further regulation and guidance on the small vehicle exemption stated above.  Generally, a driver is considered exempt under the Motor Carrier Exemption.  However, the TCA states that a "Covered Employee" as set forth below, may still be covered by the FLSA for overtime purposes, if he or she meets certain detailed requirements.

Indeed, §306 of the TCA sets for these requirements in more detail where it state states, in pertinent part, that 29 U.S.C. §207 of the FLSA shall apply to any "Covered Employee" notwithstanding §13(b)(1) of the FLSA (or Motor Carrier Exemption).  The definition of "Covered Employee" within the TCA includes the small vehicle exemption analysis at part (2)(B), where it states as follows:

---

[1] Defendant was most certainly engaged in interstate commerce as part of its operations.  This fact is undisputed and confirmed by the contract with the VA, the deposition testimony of Rabiah, and Plaintiffs Etzel and Byers.  The federal contract with the Detroit VA specifically states that the vendor providing transportation services must travel interstate as follows:

> Patients shall be transported to and from the JDDVAMC and the CBOC's located in Pontiac and Yale, Michigan.  This BPA also includes transportation of patients to and from **Chicago, Illinois: Cleveland, Ohio; Iron Mountain, Michigan; and Milwaukee, Wisconsin**.  (*Exhibit E*)

> (Emphasis added).  (*Exhibit G*, p. 39, lines 5-13)*;* (*Exhibit H*, p. 37, lines 7-11); (*Exhibit P*, Deposition of Janavikas, p. 15, lines 23-25).

(1)   Who is employed by a motor carrier or private motor carrier (as such terms are defined by section 13103 of title 49; United States Code, as amended by section 305;

(2)   Whose work, in whole or in part, is defined –

    (A)   As that of a driver, drivers helper, loader, or mechanic; **and**

    *(B)   As affecting the safety of operations of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate commerce or foreign commerce<u>, except vehicles</u> –*

        *(i)   <u>Designed or used to transport more than 8 passengers (including the driver) for compensation;</u>*

        *(ii)   Designed or used to transport more than 15 passengers (including the driver and not used to transport passengers for compensation; or*

        *(iii)   Used in transporting material found by the Secretary of Transportation to be hazardous under section 5103 of title 49, United States Code, and transported in a quantity requiring placarding under regulations prescribed by the Secretary under section 5103 of title 49 , United States Code; <u>and</u>*

(3)   Who performs duties on motor vehicles weighing 10,000 pounds or less.  Safe, Flexible, Efficient Transportation Equity Act: a Legacy for Users Technical Corrections Act of 2008, P.L 110-244 §306.

Defendant maintains vehicles which are designed or used to transport more than 8 passengers, including the driver, for compensation, as confirmed by the Department of Labor.

    **2.   <u>All Care Transport wheelchair vans are "designed" or used to transport over eight passengers</u>**

    It appears that Plaintiffs' only real argument set forth in their motion is that

Defendants wheelchair vans do not meet the seating or capacity requirements set forth

above.  This is simply untrue.  It should be noted that the Plaintiffs' argument rests upon their own "beliefs" and self-serving statements, but completely ignore the actual **DESIGN** and capacity of the vehicle, and how it was manufactured, which is required by the regulation set forth above in the TCA.

Please note, the definition of "covered employee" excepts vehicles that are designed to transport over eight passengers.  The TCA language relative to the transportation capacity of the van states as follows:

> (iv)    **Designed** or used to transport more than 8 passengers (including the driver) for compensation.  *Id*.

Defendant submits that both the original design of the wheelchair vans by Ford Motor Company, and the design created by its aftermarket supplier, were both to transport or carry over eight passengers.  This is made clear through the objective vehicle documents from Ford Motor Company (*Exhibit C*), and the sworn testimony of the aftermarket manufacturer, who directly supplied the wheelchair vans to Defendant.

All wheelchair vans used by Defendant are Ford Econoline E-250 and E-350 Extended models. (*Exhibit B*, ¶3)(*Exhibit D*, ¶4).  All of these wheelchair vans were originally manufactured and designed by Ford Motor Company as 12 and 15 passenger vehicles. Attached at *Exhibit C* are the Vehicle Identification Number ("VIN") Data Information sheets for almost all of Defendants Wheelchair vans (*Exhibit C*).  A review of these documents will reveal that all of Defendants wheelchair vans were originally **designed** to transport well over eight passengers.

11

What is more, even if we were to examine the design of the aftermarket modifications made by the supplier, the wheelchair vans are still designed to transport over eight passengers.  This is underscored by the sworn testimony of the President of Mobility Transportation Services who designs and supplies Care Transport with all of its wheelchair vans.

Mobility Transportation Services ("Mobility") converts or modifies manufactured vehicles to permit them to be wheelchair accessible (_Exhibit B_, ¶4).  Furthermore, Mobility is a National Highway Transportation and Safety Administration ("NHTSA") modifier and second stage manufacturer, and must comply with all federal and state laws (_Exhibit B_, ¶4).

As part of the modification process, Mobility installs Braun Lift Wheelchair lifts, Q-Straint wheelchair tie-downs, and Freedman brand seats (_Exhibit B_, 5).  The modification process begins by removing any seat rear of the C pillar, leaving the front driver and passenger bucket seats, as well as a three passenger bench seat forward of the C pillar (_Exhibit B_, ¶6).  After these benches are removed, an open area of 8' long by 5' 8" wide is created for the wheelchairs (_Exhibit B_, ¶6)(_Exhibit N_, Design schematic of wheelchair van).

Furthermore, the design modifications include the installation of several L style tracks and/or L pods to the floor of the 8' by 5' 8" area, as anchorages for wheelchair tie-downs or securing devices (_Exhibit B_, ¶6).  The installation of these tracks permits Defendant to place up to 16 different tie-downs and associates belts.  For each wheelchair, you would need four tie-downs for belting.  The tie-downs are easily removed and replaced.

Indeed, it is the design and installation of the tracking that permits the use of up to 16 tie-downs.

The design of the L style tracks and/or L pods permits the tie-downs for up to four wheelchairs to be installed at any time (*Exhibit B*, ¶6).  Defendant has, in fact, transported up to four wheelchairs in its wheelchair vans, consistent with the design stated above (*Exhibit D*, ¶11).  Although the wheelchair vans are designed to carry or transport over eight passengers, including four wheelchairs, they often do not transport this many.  Therefore, although they are **designed** to do so, each wheelchair van typically only has the tie-downs for two wheelchairs in each vehicle (*Exhibit D,* ¶12).  This is due to budgetary concerns and to avoid trip hazards for drivers (*Exhibit D*, ¶12).

Therefore, there the manufacturer and supplier of the Defendant's wheelchair vans has testified that the Defendant's wheelchair vans are **designed** to transport at nine passengers, including the driver, passenger, three individuals on a rear bench, and up to four wheelchairs (*Exhibit B*, ¶7).  Based upon this overwhelming evidence, Defendant's drivers are not "covered employees" and are not entitled to overtime under the FLSA, as declared by the Department of Labor and informed to Defendant.

 **3. The DOL Enforcement Guidance sets forth the manner in which to examine passenger capacity.**

Defendant submits that the evidence set forth above is quite clear that that the Defendants' wheelchair vans are vehicles both designed to, and used to, transport more than eight passengers.  However, Defendant submits that even if you were to take Plaintiff's

argument regarding the number of wheelchairs which can fit within a van as true, the

Department of Labor's Enforcement Guidance flatly refutes their argument.

Plaintiff's motion and argument that only two wheelchairs can fit in a wheelchair van

does not examine or address the original **design** of the vehicles.  What is more, the

argument is only supported by the beliefs of the Plaintiffs based upon their limited

experience.  Moreover, the Plaintiff's argument flatly ignores the Department of Labor's

Enforcement Guidance relative to examining the number of passengers in a vehicle.  In

2010, the Department of Labor set forth the following guidance regarding how to examine

the number of passengers for examining whether employees were covered by the FLSA:

> For enforcement purposes, we will use the following standards:
> "Designed or used to transport more than 8" (or more than 15) – WHD
> will determine this information based on the **vehicle's current design**
> and the vehicle capacity as found on the door jamb plate. **Where a
> vehicle's seating capacity has been reduced, for example by
> removing seats to accommodate a wheelchair, we will count the
> resulting seating capacity** *plus add 1 for each wheelchair
> placement.* Where a vehicle's capacity has been **increased**, for
> example by bolting a bench seat into a cargo area, we will not count
> the added capacity unless the vehicle has been recertified by DOT for
> that purpose.  (*Exhibit O*).

Based upon the Department of Labor's above enforcement guidance, for each

wheelchair placement in a van, the Department of Labor will add one additional seating

capacity unit.  Therefore, even taking Plaintiffs' argument that only two wheelchairs can fit

as true, when using the Department of Labor Enforcement Guidance, it *still* results in a

vehicle that transports over eight individuals.  The capacity would include the driver (1),

passenger (1), three bench seats (3), and two wheelchairs (4); equaling nine).

Again, regardless of whether you review the original design of the vehicle, or even

take Plaintiffs argument at true, the Defendant's wheelchair vans are designed and or used

to transport over eight passengers.  This was explained by the DOL to Defendants and

confirmed in its findings.

### 4. The Court cannot divide up jurisdiction over Defendant's fleet of vehicles and drivers.

Plaintiffs final argument concedes that Defendant wheelchair vans can transport over

eight passengers, but then goes onto state that any driver who may not have driven a

wheelchair van during any part of a work week, but instead drove a sedan or minivan, is a

"covered employee."  Again, Plaintiffs' argument fails where published precedent has

thwarted any such notion.

In pertinent part, current published precedent sets forth that where a majority of an

employer's fleet of vehicles are exempt and/or do not fall under the small vehicle exemption,

the entire fleet should be exempt.  Put another way, an employer cannot, and should not, be

charged with splitting and changing the jurisdiction of its employees between the FLSA and

the Motor Carrier Act from week-to-week and employee-to-employee.  *Collins v. Heritage*

*Wine Cellars, LTD.,* 589 F.3d 895 (7th Cir. 2009).

Defendant has approximately 54 total vehicles, and 40 of those vehicles are wheelchair accessible vans (*Exhibit A*, p. 40., line 20 – p. 41, line 11).  Approximately 75% of Defendants' vehicles are wheelchair vans.

However, despite the fact that Defendant may have a few vehicles that do not meet the criteria in (B)(i) above, the Courts have held that the small vehicle exception would not apply because the Court should not divide jurisdiction within a class of employees (or drivers here).

Indeed, when presented with the issue of whether an employee who may have not worked on a covered vehicle should be separated from the other employees/fleet, Judge Posner of the 7th Circuit stated as follows:

> [d]ividing jurisdiction over the same drivers, with the result that their employer would be regulated under the Motor Carrier Act when they are driving the big trucks and under the Fair Labor Standards Act when they were driving trucks that might weigh only a pound less, would require burdensome record-keeping, create confusion, and give rise to mistakes and disputes.  *Collins v. Heritage Wine Cellars, LTD.,* 589 F.3d 895 (7th Cir. 2009).

Judge Posner's analysis is precisely applicable here.  The vast majority of Defendant's drivers drive wheelchair accessible vans (40 of 54 vehicles) which transport over 8 passengers and meet the Motor Carrier Exemption.  To permit a *de minimus* portion of driving in other vehicles to allow "covered" status, would only serve to divide the jurisdiction and, as Judge Posner indicates, would create havoc.  This was not the intended purpose of the TCA.

16

Judge Posner makes clear his ruling on the issue of splitting the jurisdiction of employees, and advises against it. His opinion is published and his position is relied upon by the majority of Courts. The only case that Plaintiff has set forth to support their position is an unpublished opinion, which should not be persuasive to this Court.

Furthermore, even in the case of mixed activities, between the vehicles driven by a few employees, the Motor Carrier Act favors coverage and the application of the exemption. Indeed, the applicable regulations provide that:

> [I]f the bonafide duties of the job performed by the employee are in fact such that he is (or, in the case of a member of a group of drivers, driver's helpers ... that he is likely to be) called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities ... he comes within the exemption in all workweeks when he is employed at such job. 29 C.F.R. § 782.2(b)(3).

As part of each employee's responsibilities, they are expected to be prepared to operate a wheelchair accessible van. With respect to "Driver Responsibilities," Defendant's employee handbook states that: "Driver must be able to drive wheel chair van and assist patients into and out of the vehicle, operate wheelchair lifts, and secure a wheelchair properly." (*Exhibit I*, Employee Handbook, p. 14).

The proposed class of Plaintiffs' drivers here are not "covered employees" but, rather, are exempt under the Motor Carrier Exemption. For this reason alone, Plaintiff's claims fail and should be dismissed.

**B. THE DEPARTMENT OF LABOR HAS INVESTIGATED DEFENDANT AND HAS DETERMINED THAT THE PLAINTIFFS ARE EXEMPT FROM OVERTIME AND NOT "COVERED EMPLOYEES."**

The Department of Labor fully investigated Defendant's wage and hour practices, and found that Defendant was not in violation of 29 U.S.C. §207 and, in turn, that Plaintiffs are not "covered employees." Therefore, Plaintiffs are not entitled to any overtime compensation. The DOL Investigator made this clear through numerous different avenues. Despite the clear and unmistakable communication to both Care Transport and the employees that the drivers w[2]ere not entitled to overtime, Plaintiffs have unconscionably brought forth this lawsuit.

There can be no dispute that the investigation included a review of whether overtime was owed and the employees were exempt. At the beginning of the DOL Investigation, the Investigator specifically informed Defendant that it was going to be determining whether Defendant was in compliance with the FLSA, as well as other laws (*Exhibit J*). What is more, Plaintiff Etzel, who brought forth the complaint to the DOL, **specifically** stated as part of her complaints that she believed Defendant owed her overtime.

Q.	Did you state to Mr. Murphy that you believe employees should be getting overtime?

A.	Correct.

Q.	And that was in that initial discussion in January of 2013?

---

[2] Plaintiff's Complaint references an illusory attempt argue Defendant was not exempt under the "Taxi Driver" Exemption, but wholly ignores the DOL Investigators report and findings that the employees were exempt under the Motor Carrier Exemption. Plaintiffs' repeated attempts to continue to seek compensation for which they are not entitled is harassment toward the Defendant.

A.      Correct.  (*Exhibit G*, p. 47, lines 11-16).

The issue of potential overtime or violation of 29 U.S.C. §207 was front and center before the DOL Investigator from the very beginning of his investigation.  *Id.*  The DOL conducted a thorough and detailed investigation of Defendant which lasted approximately 5 months.  At the conclusion of the investigation, the DOL and its Investigator found certain violations, but NO violation of 29 U.S.C. §207.  Stated another way, the DOL and its Investigator determined that the employee drivers were exempt and not entitled to overtime and not "covered employees" under the TCA.  This conclusion was presented to all parties involved in every way imaginable.

The DOL Investigator specifically informed Defendant's owner, Sabah Rabiah, that the drivers were exempt from overtime (*Exhibit A*, p. 57, lines 18-21).  Additionally, Plaintiff Etzel testified that the DOL Investigator also informed her that Defendant's drivers were exempt from overtime:

Q.      But he stated that he did not believe that the drivers at Care Transport were entitled to overtime?

A.      Correct.  (*Exhibit G*, p. 50, lines 7-9).

Also, Mr. Murphy's case narrative specifically states that the drivers are exempt when he states as follows:

Transportation contracts are exempt from the requirements under the CWHSSA, and **drivers are exempt from overtime under 13(b) of the FLSA as drivers who can leave the state and drive vehicles designed to carry at least 8 passengers, for compensation**.  (*Exhibit L*, DOL Case Narrative, p. 4) (Emphasis added).

19

The basis of Plaintiffs' claims are disbelief in the findings of the Department of Labor. The purpose of the Department of Labor is to investigate proposed wage and hour violations and ensure that individuals are provided proper compensation.  To accept Plaintiffs' theory, you would have to believe the Department of Labor investigated Defendant, but then chose to ignore potential violations and properly compensate individuals.  This is contrary to the DOL's mandate, and a rather ludicrous position.

The basis of Plaintiffs' cavalier and illogical position is made clear from Plaintiff Eztel's testimony, where she states the following:

> Q.    And as you sit her today you don't trust or respect the decision of Mr. Murphy as to overtime?
>
> A.    No.
>
> Q.    And why is that?
>
> A.    Because I think we're entitled to it.
>
> Q.    Despite what the Department of Labor said?
>
> A.    Correct.  (*Exhibit G*, p. 53, lines 12-18).

Again, the Department of Labor made it very clear to all parties involved that the drivers were exempt from overtime, and there can be no dispute that this determination was not presented.  In sum, they were not "covered employees."

What is more, Plaintiffs' argument that the DOL would affirmatively ignore a potential violation such as unpaid overtime – all while informing the complainant that the drivers are

exempt – is ludicrous.  Simply put, it is defamatory and an affront to the integrity of the Department of Labor.

## V.   CONCLUSION

The objective record demonstrates that the Plaintiff drivers employed by Defendant were exempt under the Motor Carrier Exemption.  The employees were drivers engaged in interstate commerce, and were not subject to the small vehicle exception.  In pertinent part, the Defendant's wheelchair vans were designed to carry over eight passengers and, in fact, have done so.  Furthermore, the Court should not divide the jurisdiction of the Defendant's employees simply because a few employees may not drive wheelchair vans.  Therefore, Plaintiffs are not entitled to overtime compensation, as they are not "covered employees" under the TCA, and there has been no violation of 29 U.S.C. §207.  This is and was confirmed by the findings of the Department of Labor.

Accordingly, the Plaintiffs' Motion should be denied, and Defendant's Motion for Summary Judge should be granted.

WHEREFORE, Defendant respectfully requests that this Court enter an Order denying Plaintiffs' Motion for Partial Summary Judgment, and award Defendant sanctions, costs and attorney fees for having to defend this frivolous action.

Respectfully Submitted,

PLUNKETT COONEY

By:  /s/Gary W. Francis
      Stanley C. Moore, III (P23358)

21

Gary W. Francis (P64748)
Attorney(s) for Defendant
38505 Woodward Avenue, Suite 2000
Bloomfield Hills, MI  48304
PH: (248) 901-4000 / FAX: (248) 901-4040

Dated:  April 3, 2015

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

YASHAE BYERS. GLORIA ETZEL, and
JILL JANAVIKAS, on behalf of themselves
and all others similarly situated,

      Plaintiffs,                  Case No. 2:13-cv-15174-LPZ-LJM

                                   Hon. Lawrence P. Zatkoff (presiding)

v.                               Hon. Laurie J. Michelson (referral)

CARE TRANSPORT, INC.,

      Defendants,

_____/

| | |
|---|---|
| DAVID A. HARDESTY (P38609) | STANLEY C. MOORE, III (P23358) |
| CAITLIN E. MALHIOT (P76606) | GARY W. FRANCIS (P64748) |
| **GOLD STAR LAW, P.C.** | **PLUNKETT COONEY** |
| Attorneys for Plaintiffs | Attorneys for Defendant |
| 2701 Troy Center Drive, Suite 400 | 38505 Woodward Avenue |
| Troy, MI. 48084 | Suite 2000 |
| (248) 295-7210 | Bloomfield Hills, MI  48304 |
| dhardesty@goldstarlaw.com | PH: (248) 901-4000 |
| cmalhiot@goldstarlaw.com | FAX: (248) 904-4040 |
| | smoore@plunkettcooney.com |
| | gfrancis@plunkettcooney.com |

_____/

## CERTIFICATE OF SERVICE

       I hereby certify that on Friday, the 3rd of April, a copy of the foregoing **DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** was filed with the District Court, Eastern District of Michigan, Southern Division, using the Court's CM/ECF system, which served electronically all registered ECF users who have filed notices of appearance in this matter.  Further, that I have mailed or will mail copies of said document via the U.S. Postal Service, with first-class postage thereupon fully prepaid, to all non-ECF participants.

                                 /s/Gary W. Francis
                                  Gary W. Francis (P64748)