## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**YASHAE BYERS**, **GLORIE
ETZEL**, and **JILL JANAVIKAS**,
on behalf of themselves and all
others similarly situated,

                Plaintiffs,

                                             No. 13-CV-15174
vs.                                 Hon. Gerald E. Rosen
                           Magistrate Judge Laurie J. Michelson

**CARE TRANSPORT INC.**,
a Michigan corporation

                Defendant.

_____/

## OPINION AND ORDER REGARDING THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTION TO CERTIFY CLASS FOR FLSA COLLECTIVE ACTION

## I. INTRODUCTION

The Fair Labor Standards Act of 1938 ("FLSA") provides that in certain

circumstances, employers must pay their employees at a time-and-a-half rate for

work exceeding forty hours per week.  In this FLSA action, Plaintiffs Yashae

Byers, Glorie Etzel, and Jill Janavikas -- who served as drivers for Defendant Care

Transport Inc., a transportation service provider for disabled veterans -- contend

that they, along with a putative class of similarly situated fellow employees, were entitled to overtime pay under the FLSA that Defendant refused to grant them.

Currently before the Court are the parties' cross motions for summary judgment (Dkt. ## 22-23), as well as Plaintiffs' Motion to Certify Class for FLSA Collective Action (Dkt. # 11).  Defendant does not dispute that Plaintiffs worked overtime hours and that Defendant did not pay them time-and-a-half wages; rather, Defendant asserts that Plaintiffs are not *eligible* for FLSA overtime because they drove certain vehicles covered under the Motor Carrier Act of 1935, which provides for an exemption from the FLSA's overtime provisions.  Plaintiffs, in contrast, contend that the vehicles at issue do not in fact qualify as exempted vehicles under the Motor Carrier Act, and, even if they did, the fact that Plaintiffs also drove smaller vehicles not covered by the Motor Carrier Act means that they must be entitled to overtime pay for weeks in which they drove those smaller vehicles.

Having reviewed and considered the parties' briefs and supporting documents and the entire record of this matter, the Court has determined that the pertinent allegations and legal arguments are sufficiently addressed in these materials and that oral argument would not assist in the resolution of this motion. Accordingly, the Court will decide the motion "on the briefs." *See* L.R. 7.1(f)(2). This Opinion and Order sets forth the Court's ruling.

## II. PERTINENT FACTS

Defendant Care Transport, Inc. ("CTI") is a transportation services company that focuses on providing transportation of disabled veterans. Sabah Rabiah Aff., Dkt. # 26-5, ¶ 2. CTI primarily transports patients to and from two Veterans Affairs ("VA") Hospitals in Detroit and Ann Arbor, though it also provides rides to and from other locations, including private doctor's offices and nursing facilities.[1] *Id*; Sabah Rabiah Dep., Dkt. # 23-2, at 16. CTI claims to have "about 47 employees," about 30 of which are drivers who transport patients in CTI vehicles.[2] CTI drivers are paid on an hourly basis and receive bonuses or other additional pay in certain circumstances, but they are not paid one and a half times the normal rate for hours worked in excess of 40 per week (though some drivers do work that much). Rabiah Dep. ¶ 56.

As a transportation provider, CTI owns a fleet of vehicles, including sedans, minivans, and wheelchair vans. The vehicles each accommodate a different

---

[1] Defendant has contracts with both of these hospitals -- Defendant is the subcontractor to a company called Metropolitan Shuttle for transportation services at the Detroit VA hospital, and the primary contractor for the Ann Arbor VA hospital. *See* Transportation Services Agreement, Dkt. # 23-3.

[2] The Court notes that CTI does not provide proper evidentiary support for this assertion because it cites to a page in as deposition that it did not attach to its various briefs, having provided only excerpts of witness depositions, rather than entire transcripts. This problem arises on several other occasions. Plaintiffs do not appear, however, to dispute this assertion (which is only relevant as background information).

number of passengers. CTI's Sedans can seat four or five passengers and minivans can seat up to seven passengers. Rabiah Dep., at 40-43. CTI's wheelchair vans are modified Ford Econoline E-250 and E-350 trucks, which are originally manufactured as 12 and 15 passenger vehicles, respectively. David Brown Aff., Dkt. # 26-3, ¶ 3. The vans are modified by a separate company by removing the rear seats of the van and installing tracks and straps to tie down wheelchairs. *Id.* ¶¶ 6-8. According to David Brown -- president of the company that modifies the vans -- all of the wheelchair vans can accommodate nine total passengers after modification, including four wheelchairs, a driver, and four standard passengers (with one passenger seated in a front passenger seat and three seated in a "bench" seat located behind the driver's seat and front passenger seat). *Id.* Plaintiffs, however, contend that only two wheelchairs can be accommodated behind the bench seats, due to limited space and the fact that each wheelchair requires four straps to be secured, while the vans contain only eight straps. Glorie Etzel Decl., Dkt. # 22-3, ¶ 13; Yashae Byers Decl., Dkt. # 22-5, ¶ 11; Jill Janavikas Decl., Dkt. # 22-4, ¶ 13. Sabah Rabiah, owner and operator of CTI, recognizes that each van generally only maintains the equipment to tie down two wheelchairs at a time "for budgetary reasons" and "to avoid trip hazards" but maintains that the vans are capable of transporting up to four wheelchairs and asserts that she has personally transported up to four properly secured wheelchairs in the vans. Rabiah Aff. ¶¶ 1,

4

11-12.  Rabiah further asserts that "[i]n the door jamb of over 95% of all Care Transport wheelchair vans, the manufacturer sticker states that the van was designed to carry or transport over nine passengers."  *Id.* ¶ 13.

The three named Plaintiffs are current or former employees of CTI who all served as drivers.  Each generally drove a different type of vehicle for CTI.  Etzel primarily drove a sedan, occasionally drove a minivan, and never drove a wheelchair van.  Etzel Decl. ¶¶ 3, 5, 7.  Janavikas primarily drove a minivan, but occasionally drove a sedan or a wheelchair van.  Janavikas Decl. ¶¶ 3, 5, 7.  And Byers primarily drove a wheelchair van, but occasionally drove a sedan or a minivan.  Byers Decl. ¶¶ 3, 5, 7.[3]  During the period at issue here, each of the three named Plaintiffs worked at least some weeks in excess of 40 hours.  *See* Rabiah Dep., at 45.

In addition to in-state trips to and from the two VA hospitals, CTI drivers make some interstate trips.  Such trips are contemplated in the contracts between CTI and the hospitals, *see* Detroit VA Transportation Contract, Dkt. # 23-4, ¶ A.1 (including transportation of patients "to and from Chicago, . . . Cleveland, . . . and Milwaukee"),  and, according to Rabiah, all CTI drivers make interstate trips, with trips to Cleveland and Toledo occurring "almost every day."  Rabiah Dep., at 77.

---

[3] The CTI employee handbook makes clear that all drivers are expected to be capable of driving the wheelchair vans.  Employee Policy Handbook, Dkt. # 23-8, at 14.

5

Plaintiffs Etzel and Byers both testified at their depositions that they made interstate trips as part of their jobs. Etzel Dep., at 39; Byers Dep., at 37.

As its contracts are made with the Federal Government through the U.S. Department of Veterans Affairs, CTI's VA contracts are subject to the McNamara–O'Hara Service Contract Act of 1965 ("SCA"), 41 U.S.C. § 6702 *et seq.*, which mandates that employers provide wages "in accordance with prevailing rates in the locality," provide fringe benefits, and meet various other requirements. *Id.* § 6703. On January 16, 2013, the U.S. Department of Labor ("DOL") notified CTI that it would be conducting an investigation "to determine compliance with the Fair Labor Standards Act and related laws."[4]  Letter from Daniel Murphy, U.S. Department of Labor, to Care Transport (Jan. 16, 2013), Dkt. # 26-11. Presumably, the "related laws" included the SCA, because the report generated from the inspection states that the investigation was an "SCA investigation, limited to drivers/SCA." DOL Report, Dkt. # 26-12, at 2. The Case Narrative attached with the report further states that "[a] concurrent FLSA investigation was not conducted. This investigation was limited to the SCA and to employees employed as drivers." SCA Case Narrative, Dkt. # 26-13, at 1.

---

[4] This investigation was triggered by a complaint from Plaintiff Etzel. Etzel Dep., at 44. Etzel had indicated in her complaint that she felt that she should be paid an additional overtime wage. See *id.* at 50.

Despite these statements, the DOL Report indicates that CTI was cited for "[f]ailure to keep adequate records" under the FLSA, as well as for failure to pay the proper wage and provide fringe benefits under the SCA. DOL Report, at 1-2. As a result, CTI was required to back pay over $24,000 to its employees. *Id.* at 2. There was no indication of a violation of overtime pay requirements under the FLSA or the SCA, which does not provide for overtime pay independently but does, in its related Code of Federal Regulations provisions, make note of the FLSA overtime requirements. *See* 29 C.F.R. § 4.181. According to Rabiah, Daniel Murphy, the DOL investigator, told Rabiah that CTI was exempt from overtime payments for its drivers. Rabiah Dep., at 57. Etzel also testified in her deposition that Murphy told her that he did not think the drivers were entitled to overtime payments. Etzel Dep., at 50. The Case Narrative also states that "Transportation contracts are exempt from the requirements under [Contract Work Hours and Safety Standards Act], and drivers are exempt from overtime under 13(b)(1) of the FLSA as drivers who can leave the state and drive vehicles designed to carry at least 8 passengers, for compensation." SCA Case Narrative, at 4.

The named Plaintiffs filed this action on December 19, 2013, asserting a single claim of FLSA Violation. They assert their claim on behalf of themselves and a putative class defined as

> All current and former employees employed as transport drivers and compensated on either an hourly or non-exempt salary basis by

7

Defendant throughout Michigan who worked for at least one week in excess of forty hours but were paid only for forty hours, during the period from three years prior to the filing of this complaint to the present.

Pl.'s Compl., Dkt. # 1, ¶¶ 38-45.  Currently before the Court are several motions. Plaintiffs have filed a Motion to Certify Class for FLSA Collection Action (Dkt. # 11), and both parties have filed motions for summary judgment (Dkt. ## 22-23).

### III. DISCUSSION

#### A.   Summary Judgment Standard of Review

Through their present motions, both parties seek summary judgment in their favor pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Under that Rule, summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  In addition, where a moving party seeks an award of summary judgment in its favor on a claim or issue as to which it bears the burden of proof at trial, this party's "showing must be sufficient for the court to

hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir. 1986) (emphasis and citation omitted).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). But, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

**B.    Analysis**

The Fair Labor Standards Act of 1938 ("FLSA") provides a number of basic protections for the nation's workers, including, *inter alia*, requirements regarding minimum wage, employee age, and recordkeeping. At issue in this case are the FLSA's overtime pay provisions and the various exceptions to those provisions. The FLSA requires employers to pay their employees "at a rate not less than one and one-half times the regular rate" for work exceeding forty hours per week. 29 U.S.C. § 207(a)(1); *see also Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015). However, the FLSA's overtime provisions do not apply to "any employee

with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1). The statute referenced in § 213(b)(1) is a section of the Motor Carrier Act of 1935 that authorizes the Secretary of Transportation to establish "qualifications and maximum hours of service for employees of . . . a motor carrier" if "property . . . [is] transported by [the] motor carrier between a place in a State and a place in another State," 49 U.S.C. §§ 13501(1)(A), 31502(b), so long as those employees "engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act," 29 C.F.R. §§ 782.2(a); *see also Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895, 897 (7th Cir. 2009).[5]

Until recent amendments, in order for an employee of a motor carrier to be within the Secretary's authority, she had to be the operator of a "commercial motor vehicle," which is defined in the act as a vehicle which:

---

[5] Plaintiffs appear to concede that CTI is a "motor carrier" within the meaning of the Motor Carrier Act, *see* 49 U.S.C. § 13102, and that CTI's drivers are engaged in interstate commerce sufficient to bring them within the meaning of the act, *see* 49 U.S.C. § 13501, though Defendant spends some time in its brief setting out to establish these points. *See* Def.'s Mot. for Summ. J., Dkt. # 23, at 8-12. Instead, Plaintiffs focus almost exclusively on the small vehicle exception and the so-called "sick and injured persons" exception under 49 C.F.R. § 390.3, as discussed below.

10

(A) has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater;

(B) is designed or used to transport more than 8 passengers (including the driver) for compensation;

(C) is designed or used to transport more than 15 passengers, including the driver, and is not used to transport passengers for compensation; or

(D) is used in transporting material found by the Secretary of Transportation to be hazardous . . . .

49 U.S.C. § 31132. However, Congress later enacted the SAFETEA-LU Technical Corrections Act of 2008 ("SLTCA"), Pub. L. No. 110-244, 122 Stat. 1572, which amended the Motor Carrier Act in two pertinent respects. First, it amended the Act by "striking 'commercial motor vehicle (as defined in section 31132)'" from 49 U.S.C. § 13102, and replacing it with "motor vehicle." *Id.* § 305(c). But more importantly, the SLTCA provided that "[b]eginning on the date of enactment of this Act, section 7 of the Fair Labor Standards Act of 1938 (29 U.S.C. 207) shall apply to a covered employee notwithstanding . . . 29 U.S.C. 213(b)(1)." *Id.* § 306(a). The Act defined a "covered employee" as an individual:

(1) who is employed by a motor carrier or motor private carrier (as such terms are defined by section 13102 of title 49, United States Code, as amended by section 305);

(2) whose work, *in whole or in part*, is defined—

(A) as that of a driver, driver's helper, loader, or mechanic; and

11

(B) as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce, *except* vehicles—

(i) designed or used to transport *more than 8 passengers (including the driver) for compensation*;

(ii) designed or used to transport more than 15 passengers (including the driver) and not used to transport passengers for compensation; or

(iii) used in transporting material found by the Secretary of Transportation to be hazardous . . . ; and

(3) who performs duties on motor vehicles weighing 10,000 pounds or less.

*Id.* § 306(c)(2) (emphasis added).  The emphasized portions highlight the upshot of the statute as it applies this case: if a driver employed by a motor carrier or motor private carrier works "in whole or in part" with vehicles weighing 10,000 pounds or less, so long as those vehicles are "designed or used" to transport fewer than nine passengers (including the driver) for compensation, then she is "covered" under the SLTCA and thereby protected by the FLSA's overtime provisions (sometimes termed the "small vehicle exception").  The parties recognize that all of CTI's vehicles weigh less than 10,000 pounds, and so the only issue here is the capacity of the vehicles.

Plaintiffs' argument, then, is simple.  First, they argue that all CTI drivers are "covered employees" under the SLTCA because CTI's sedans and minivans both unquestionably accommodate fewer than nine passengers (including the

12

driver), and because the named Plaintiffs testified that the wheelchair vans cannot accommodate more than two wheelchairs at once, allowing for only seven total passengers.  Pl.'s Mot. for Partial Summ. J., Dkt. # 22, at 8-10.  Thus, they assert, all of CTI's vehicles fall within the small vehicle exception.  Second, they argue that even if the wheelchair vans could transport more than eight passengers, any CTI employee who at least in part drove sedans or minivans "fell within the SLTCA limits, such that they are 'covered persons' entitled to overtime pay regardless of the FLSA 'motor carrier' exemption" because they worked "in part" with small vehicles under the SLTCA.  *Id.* at 11.  The Court will address each argument in turn.

### 1.    Status of Defendant's Wheelchair Vans Under the Small Vehicle Exception

Defendant makes three arguments in response to Plaintiffs' contention that the wheel chair vans are not "designed or used to transport more than 8 passengers (including the driver) for compensation" within the meaning of the SLTCA.  First, it asserts that the vans, before being modified, were originally designed by Ford Motor Company as 12 or 15 passenger vehicles, depending on model.  Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Dkt. # 26, at 11-12.  Undeniably, this is factually true, but it does not end the story, and the Court does not find the argument persuasive.   Though neither party has cited any cases applying such an interpretation of the statue, the Court finds the most faithful reading of the statute

13

to be that the vehicle must be designed to transport more than eight passengers *in the form for which it is to be used*. CTI's argument, taken to its logical end, would mean that CTI (or any carrier) could avoid the FLSA's obligations by repurposing all of the parts from a large van, convert them into a smaller sedan-like vehicle never intended to transport even close to eight passengers, and entirely avoid the small vehicle exception. The Court does not find this a plausible reading of the statute. Indeed, as discussed below, the Department of Labor has specific guidelines as to how to classify the capacity of modified vehicles, indicating that the analysis is not as simple as looking at the original capacity of a modified vehicle.

Defendant's stronger argument is that "even if we were to examine the design of the aftermarket modifications made by the supplier, the wheelchair vans are still designed to transport over eight passengers." Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., at 12. In support, Defendant refers to David Brown's affidavit describing the modification process for the wheelchair vans, as well as a schematic of the vans themselves.[6] Here, however, the court finds that there is a clear factual dispute as to whether the design *actually allows* for the wheelchair vans to transport more than eight passengers. Defendant brings forth evidence tending to

---

[6] Defendant also contends, through the testimony of Rabiah, that the vans were *actually used* to transport four wheelchairs at once. But again, Plaintiffs dispute this testimony.

prove that the design allows for four wheelchairs to be placed, but Plaintiffs contend that, *as designed and operated*, the vans cannot allow four wheelchairs to be placed.  If Plaintiffs' version of the facts is actually correct, Defendant cannot avoid the small vehicle exception merely by *intending* in the design that the vans be capable of holding four wheelchairs; instead, the natural interpretation of the statute is that the vans must be designed to be *actually capable* of such a use. Otherwise, an employer could avoid the statute by merely bringing forth testimony regarding design even if the vehicle were clearly not capable of the purpose for which it was allegedly designed.  Put differently, Defendant has not provided evidence demonstrating that there is no issue of fact as to whether the vans were *actually* designed to allow transport of more than eight passengers; instead, it has provided evidence demonstrating that the design *intended* such a result.  This is not sufficient to grant summary judgment under the statute.

Last, Defendant asserts that "even if you were to take Plaintiffs['] argument regarding the number of wheelchairs which can fit within a van as true, the Department of Labor's Enforcement Guidance flatly refutes their argument." Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., at 13-14.  Defendant refers to a "Field Assistance Bulletin" from Nancy J. Leppink, U.S. Department of Labor Deputy Administrator, to regional administrator and district directors in the department.  The bulletin describes the changes resulting from the enactment of the

15

SLTCA, and specifically articulates how to count wheelchair seats in modified vehicles, stating "[w]here a vehicle's seating capacity has been reduced, for example by removing seats to accommodate a wheelchair, we will count the resulting seating capacity plus add 1 for each wheelchair placement."  Field Assistance Bulletin, U.S. Dep't of Labor: Wage and Hour Div. (Nov. 4, 2010), Dkt. # 26-16, at 1.  Defendant bizarrely interprets this language as indicating that each wheelchair counts as *two* seats -- one for the wheelchair seat itself and then a second sort of "bonus" point.  As Defendant puts it, "even taking Plaintiffs' argument that only two wheelchairs can fit as true, when using the Department of Labor Enforcement Guidance, it still results in vehicle that transports over eight individuals. The capacity would include the driver (1), passenger (1), three bench seats (3), and two wheelchairs (4); equaling nine)."  Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., at 14-15.  The Court flatly rejects this rather Procrustean interpretation -- the bulletin quite obviously indicates that where wheelchairs have replaced seats in the vehicle, the total capacity is measured by examining the number of *actual seats* in the vehicle when all wheelchairs are in place, such that the capacity indicates how many individuals may actually be seated in the vehicle as modified.[7]

---

[7] Defendant further notes that the bulletin instructs examiners to "determine [the vehicle capacity] based on the vehicle's current design and the vehicle capacity as found on the door jamb plate."  Field Assistance Bulletin, at 1.  Combined with the

Accordingly, the Court finds that there remain issues of material fact as to whether CTI's wheelchair vans were "designed or used to transport more than 8 passengers (including the driver) for compensation" within the meaning of the SLTCA, and accordingly the Court will not grant summary judgment to either party on that issue.[8]

### 2. Mixed Driving Activity Between Large Vehicles and Small Vehicles under the SLTCA

The Court next turns to Plaintiffs' second argument -- that any CTI employee who at least in part drove sedans or minivans fell within the SLTCA limits because they worked in part with so-called "small" vehicles under the SLTCA. There is no question that the plain language of the statute favors

---

assertion by Rabiah that 95% of CTI's wheelchair vans contain a door jam plate indicating that they can carry a total number passengers of nine or greater, this is good evidence that the wheelchair vans do not fall within the small vehicle exception. But as the court explained above, this does not resolve the factual dispute as to whether the vans were actually designed to allow at least nine passengers or merely intended to do so.

[8] Plaintiff asserts that the Court should not consider the affidavit of David Brown as evidence on the motions for summary judgment because, according to Plaintiff, Defendant "failed to include either [David Brown] or the [the entity that performed the van modifications] in its otherwise-exhaustive Witness List." Pl.'s Reply, Dkt. # 27, at 6. Brown's affidavit, as discussed above, is the primary evidence through which Defendant argues that the wheelchair vans were designed to transport more than eight passengers. Plaintiffs note that, in at least one previous case, this Court has excluded evidence in deciding a motion for summary judgment for a similar shortcoming. *Transmatic, Inc. v. Gulton Indus., Inc.*, 818 F. Supp. 1052, 1060 (E.D. Mich. 1993). The Court need not address this issue because, since the court has denied Defendant's Motion for Summary Judgment, Plaintiffs have suffered no prejudice resulting from any use of Brown's affidavit.

Plaintiffs.  A "part" is a "portion or division of a whole" or a "certain amount, but not all, of any thing or number of things."  2 Oxford English Dictionary 497 (1971).  Under that meaning, there is no question that at least some of the plaintiffs worked "in part" by driving "motor vehicles weighing 10,000 pounds or less in transportation," falling within the small vehicle exception -- a "certain amount, but not all" of at least some plaintiffs' driving involved sedans or minivans.

Defendant does not seriously contest this plain language interpretation. Instead, it argues that the small vehicle exception, despite its plain language, is not satisfied where an employee works with both small and large vehicles in the course of her job.  And, as Defendant notes, "The vast majority of Defendant's drivers drive wheelchair accessible vans (40 of 54 vehicles) which transport over 8 passengers and meet the Motor Carrier Exemption."  Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., at 16.  In support of this argument, Defendant relies heavily on *Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895 (7th Cir. 2009).  That case, similar to this one, involved truckers who transported wine across state lines and alleged that their employer failed to pay them overtime pay that they were entitled to under the FLSA.  *Id.* at 896-97.  The majority of that opinion dealt with whether the truckers' activity was interstate in nature, but in a single paragraph at the end of the opinion, Judge Posner addresses an argument much like the one Plaintiffs make here, and resolves it in favor of the defendant:

We end with the plaintiffs' back-up argument for reversal. Between 2005 and 2008 the Motor Carrier Act limited the definition of "motor carriers" to carriers that provide transportation by (so far as bears on this case) a truck that weighs at least 10,001 pounds.  Some of the plaintiffs occasionally drove lighter trucks, and they argue that when they were doing that they were covered by the Fair Labor Standards Act.  But to divide jurisdiction in this way would be contrary to the Supreme Court's sensible decision in *Morris v. McComb*, 332 U.S. 422 (1947), which held that the employer of a driver who may sometimes be required to deliver goods in interstate commerce is subject to the Motor Carrier Act even if most of his driving is intrastate.  Dividing jurisdiction over the same drivers, with the result that their employer would be regulated under the Motor Carrier Act when they were driving the big trucks and under the Fair Labor Standards Act when they were driving trucks that might weigh only a pound less, would require burdensome record-keeping, create confusion, and give rise to mistakes and disputes.

*Id.* at 901 (citations omitted).

The problem with Defendant's reliance on *Collins*, though, is an obvious one.  The facts giving rise to that case occurred *before* the enactment of the SAFETEA-LU Technical Corrections Act of 2008, and so the "in whole or in part" language that so strongly supports Plaintiffs' argument here did not apply in *Collins*.  Though the rationale that "[d]ividing jurisdiction over the same drivers . . . would require burdensome record-keeping, create confusion, and give rise to mistakes and disputes," may still apply, the statutory analysis, which must start with the text, is entirely different.  Accordingly, the Court finds *Collins* unhelpful here.

19

Though the Sixth Circuit has not reached this issue, various other courts are split as to the proper interpretation of the "in whole or part" language of the SLTCA. Some hold that, based on the plain language of the statute, it "logically follows that any [employee] whose work on small vehicles is more than *de minimis* fits under the [small vehicle] exception." *Garcia v. W. Waste Servs., Inc.*, 969 F. Supp. 2d 1252, 1260 (D. Idaho 2013); *see also, e.g.*, *Bedoya v. Aventura Limousine & Transp. Service, Inc.*, 2012 WL 3962935, *4 (S.D. Fla. Sept. 11, 2012) (employees are entitled to overtime pay under the FLSA "if more than a *de minimis* portion of the Plaintiff's work" is done with vehicles weighing 10,000 pounds or less); *Mayan v. Rydbom Exp., Inc.*, 2009 WL 3152136, *9 (E.D. Pa. Sept. 30, 2009) ("The employee may still qualify for overtime even if part of his or her duties involve commercial motor vehicles."); *McMaster v. E. Armored Servs., Inc.*, 2013 WL 1288613, *4 (D. N.J. Mar. 26, 2013) ("It is embedded in the very definition of 'covered employees' that an employee's work need only involve the operation of non-commercial vehicles, in part, to be entitled to overtime.").[9]

Other courts have held the opposite, finding that if the work involving vehicles *not* covered by the small vehicle exception is more than de minimus, than

---

[9] The Court notes that most of these cases involve the small vehicle exception as applied to mechanics working on small vehicles, rather than drivers. There is no reason why the analysis should not apply the same here, however, as the exception deals with any employee that acts as a "driver, driver's helper, loader, or mechanic." *See Garcia*, 969 F. Supp. 2d, at 1261 (applying the same analysis to work done as a mechanic and work done as a driver).

the employee is not entitled to FLSA overtime pay.[10]  *E.g.*, *Avery v. Chariots For Hire*, 748 F. Supp. 2d 492, 500 (D. Md. 2010) ("[T]he prevailing view is that the motor vehicle exemption should apply so long as the time an employee spends operating commercial motor vehicles is more than *de minimus*"); *Hernandez v. Brink's, Inc.*, No. 08–0717–Civ, 2009 WL 113406 *6 (S.D. Fla. Jan. 15, 2009) ("[W]hen mixed activities occur, the Motor Carrier Act favors coverage of the employee during the course of employment."); *Dalton v. Sabo, Inc.*, No. 09–358–AA, 2010 WL 1325613, *4 (D. Or. Apr. 1, 2010) (motor carrier exemption applied where employer's fleet included vehicles weighing both more and less than 10,000 pounds).

For two reasons, the Court is persuaded by the interpretation favored by Plaintiffs.  First, as mentioned above, it is difficult to ignore the plain language meaning of "in whole *or* in part," which undeniably implies that if any *de minimus* part of the employees work involves vehicles covered by the small vehicle exception, the employee is entitled to overtime pay for that work.  As the *Garcia* court aptly put it, that language implies that "the focus should be on the time spent

---

[10] Most of these cases rely primarily on a Department of Labor regulation providing that "[a]s a general rule, if the bona fide duties of the job performed by the employee are in fact such that he is called upon in the ordinary course of his work to perform, either regularly or from time to time, safety affecting activities . . . he comes within the [Motor Carrier Act] exemption in all workweeks when he is employed at such job."  29 C.F.R. § 782.2(b)(3).

with small vehicles, rather than the time spent on commercial vehicles." *Garcia*, 969 F. Supp. 2d at 1260.

Second, documents from the Department of Labor strongly favor Plaintiffs' interpretation of the small vehicle exception. In a fact sheet issued by the Department in November 2009, the Department states that the Motor Carrier Act exemption "does not apply to an employee in such work weeks [where a qualified vehicle under the small vehicle exception is used] *even though* the employee's duties may also affect the safety of operation of motor vehicles weighing greater than 10,000 pounds . . . in the same work week." Fact Sheet # 19: The Motor Carrier Exemption under the Fair Labor Standards Act (FLSA), U.S. Dep't of Labor: Wage and Hour Div. (Nov. 2009), Dkt. # 26-14 (emphasis added); *see also Smith v. Schwan's Home Serv., Inc.*, No. 2:13-CV-00231-JAW, 2014 WL 6679129, at *29 (D. Me. Nov. 25, 2014) ("In other words, 'even in weeks where employees worked on vehicles weighing more than 10,000 pounds (and thus were subject to [DOT] regulations), those employees would still be entitled to overtime if they worked on vehicles weighing less than 10,000 pounds.'" (quoting *Hernandez*, 2011 U.S. Dist. LEXIS 96708, at *15)). Further, in the very Field Assistance Bulletin that Defendant relies on above, the U.S. Department of Labor states that "if a driver in any workweek . . . performs safety affecting duties on a vehicle that weighs 10,000 pounds or less ('small vehicle'), that driver alone is

nonexempt for that workweek and must receive overtime pay for hours worked over 40.  Field Assistance Bulletin, at 2.

In sum, the Court agrees with Plaintiffs that where an employee combines more than *de minimus*[11] work involving a vehicle provided for in the small vehicle exception with work involving a vehicle not covered by that exception, the employee is entitled to overtime pay under the FLSA, at least during weeks where there is such combined work.  However, there clearly remain material issues of fact as to whether each of Plaintiffs' work with vehicles covered under the exception was more than *de minimus* and when work with such vehicles occurred.  *See Garcia*, 969 F. Supp. 2d at 1261 ("The amount of time [the plaintiff] worked on

---

[11] Though nearly every court dealing with this issue uses this phrase, virtually none actually define what *de minimus* work on small vehicles would be or actually rely on the concept in their holdings, largely because nearly all cases involving the small vehicle exception involve substantial work with small vehicles.  One recent case provides at least some guidance, though it did not involve the small vehicle exception itself.  In *Linnville v. RW Properties*, No. 6:13-CV-00542-BHH, 2015 WL 196372, at *1 (D.S.C. Jan. 15, 2015), an employee of a company that sells and "sets up" manufactured homes brought suit for overtime pay under the FLSA.  *Id.* at * 1.  Nearly all of the plaintiff's activities of unrelated to work covered by the Motor Carrier Act, but the defendant asserted that because the plaintiff occasionally drove mobile homes as part of his job, he was an exempt employee as a driver under the Motor Carrier Act.  *Id.* at *3.  The Court, however, held that because the plaintiff "only served as an escort driver around four times a year, for approximately half a day at a time," his conduct was "so 'limited,' 'trivial,' 'casual,' or 'occasional' as to be *de minimis*."  *Id.* at *4-5.  Though *Linnville* involved application of the *de minimus* concept as to the issue of whether an individual's work on vehicles qualifying under the MCA was enough to bring that individual within the purview of the Act itself, its application to the small vehicle exception within the MCA is analogous.

small vehicles is a fact-specific analysis which precludes summary judgment for either party at this point."); *Mayan*, 2009 WL 3152136, at *9 (same). Accordingly, the Court will not grant summary judgment on this issue.[12]

### 3.     The Department of Labor Investigation

Last, the Court turns to the Department of Labor investigation, which Defendant asserts should be dispositive on the issue of whether Plaintiffs are

---

[12] The Court also briefly addresses Plaintiffs' cursory argument that their employment should be considered exempt from the Secretary of Transportation's regulation because it involves "[t]he transportation of human corpses or sick and injured persons." 49 C.F.R. § 390.3. As Plaintiffs readily admit, this provision has been exclusively construed to apply to ambulance services and other emergency transportation. *See, e.g., Spires v. Ben Hill County*, 980 F.2d 683, 686 (11th Cir. 1993) ("[T]he term ambulance service implies emergency situations and a freedom of movement in the event of a train wreck, cyclone, bombing, or other catastrophe. In such instances, it is vital to the public interest for ambulances to be sent over the most practicable routes to whatever destinations their services may be needed, irrespective of any limitation upon operating authority or lack thereof. Consequently, because of its emergency nature and the necessary flexible character, the regulation of such service under the certificate or permit requirements of the act would in reality be contrary to the public interest."); *Jones v. Giles*, 741 F.2d 245, 250 (9th Cir. 1984) ("we hold that ambulance services are not subject to the Motor Carriers Act, and are therefore subject to the FLSA"); *Bayles v. American Medical Response of Colorado, Inc.*, 937 F. Supp. 1477, 1484 (D. Colo. 1996) (Section 390.3 exempted an ambulance service from all requirements of the Motor Carrier Act, such that the service was subject to the FLSA and did not fall within the motor carrier exemption); *Smith v. F–M Ambulance Service, Inc.*, 914 F. Supp. 359, 362 (D. N.D. 1995) ("[A]mbulance services are not subject to the Department of Transportation's jurisdiction under the Motor Carrier Act[, and therefore the defendant] is subject to the provisions of the FLSA, including overtime compensation"). Plaintiff urges the Court to extend this reasoning to CTI's business, despite the fact that it is unquestionably different in nature from an emergency ambulance service, which can provide medical care in addition to transportation and requires the freedom of flexible emergency transportation. The Court declines to make such an extension.

entitled to FLSA overtime payments. Defendant's strongest argument is based on the fact that the investigation Case Narrative states, "Transportation contracts are exempt from the requirements under [Contract Work Hours and Safety Standards Act], and drivers are exempt from overtime under 13(b)(1) of the FLSA as drivers who can leave the state and drive vehicles designed to carry at least 8 passengers, for compensation." SCA Case Narrative, at 4. Based on this, Defendant asserts that "Plaintiffs' claims are disbelief in the findings of the Department of Labor." Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Dkt., at 11-12. Though Defendant's statement regarding the Case Narrative is objectively true, the Court has difficulty evaluating it due to the fact that the report from the Department of Labor explicitly states that the investigation was an "SCA investigation, limited to drivers/SCA," DOL Report, at 2, and the Case Narrative itself states that "[a] concurrent FLSA investigation was *not* conducted. This investigation was limited to the SCA and to employees employed as drivers." SCA Case Narrative, at 1 (emphasis added). As the Court explained above, whether CTI's drivers were entitled to overtime pay is a fact-sensitive inquiry, and the entitlement to FLSA overtime pay for each driver depends on the activities of each driver. There is no indication that the Department of Labor looked in detail at all of the particular vehicles driven by each driver or carefully assessed the capacity of the vehicles, as would need to be done when conducting a full FLSA overtime investigation.

25

Defendant asks the Court to resolve the question entirely on the basis of the report, but gives no legal basis supporting the conclusion that the Department's findings are entitled to deference, nor does the Court find any indication that they should be entitled to any deference in this situation. Accordingly, the Court does not find the Department's findings dispositive on the issues relevant here.

**C.     Plaintiffs' Motion for Conditional Certification**

Last, the Court addresses Plaintiffs' Motion for Conditional Certification of an FLSA Collective Action and for an Order to Notice to the Class (Dkt. #11). That Motion was filed when this case was pending before Judge Zatkoff. Almost immediately after transfer to this Court, the parties filed their motions for summary judgment, after the certification motion had been pending for nearly a year, and the Court elected to address the issues in the summary judgment motions first, as they could, if resolved in favor of Defendant, have mooted any need to certify a class. Because the Court finds here that summary judgment is not warranted for either party, the question of certification remains a live one. However, the briefing the parties have provided on those motions lacks the factual detail that is now available following the substantial discovery the parties have completed. Given that a primary consideration in the resolution of that issue is whether the individuals in the class are "similarly situated," and given that potential individualized issues may arise from the fact that each CTI driver's claim may well depend on how

26

frequently she drove vehicles falling within the small vehicle exception, the Court finds that it would be valuable for the parties to address the issue with independent full briefing with the benefit of the now complete factual record.[13]   Accordingly, the Court will moot the prior certification motion, and invite Plaintiffs to refile the motion in light of the legal determinations made in this Opinion and Order.

## IV. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiffs' Motion for Partial Summary Judgment (Dkt. # 22) is **DENIED**.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (Dkt. # 23) is **DENIED**.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Certify Class for FLSA Collective Action (Dkt. # 11) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated:  September 24, 2015          s/Gerald E. Rosen
                                                         Chief Judge, United States District Court

---

[13] On this point, the Court directs the parties to take special note of the potential issue of *de minimus* work under the small vehicle exception.  Potential Plaintiffs may only be a part of the class if their work was not "so 'limited,' 'trivial,' 'casual,' or 'occasional' as to be *de minimis*."  *Linnville,* 2015 WL 196372, at *4-5. Because this is clearly an underdeveloped area of MCA law without obvious boundaries, the Court urges the parties to address this issue in their class certification briefing, should any potential Plaintiffs present a close case as to *de minimus* work.

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 24, 2015, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135